UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KENNETH J. WARD, JR,

                 Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity;
Queens County District Attorney RICHARD BROWN;
Judge LENORA GERALD individually and as a State
Actor J.S.C. IDV Family Integrated Court; Deputy Bureau
Chief FLOYD HERRING; Deputy Bureau Chief SCOTT
KESSLER; Supervisory Assistant District Attorney
KEVIN FOGARTY; Assistant District Attorney TAYLOR
PISCIONERE; Assistant District Attorney KELLEY SESSONS;
Assistant District Attorney ANGELA HARPER; Assistant
District Attorney LEANNE STAINES; Clerk of the County
Queens Civil Court MAUREEN GIDDENS; Deputy Clerk
JOHN BARRY; Court Officer MAJOR LOWE; Court Officer
LIEUTENANT O'BRIEN; Court Officer MARIE BENNETT;
JOHN DOE Shield #6814; JOHN DOE Shield #3814;
JOHN DOE Shield #7910; JOHN DOE Shield #6871;
THE STATE OF NEW YORK, OFFICE OF COURT
ADMINISTRATION; DOES #1-16, individually and as
members of New York Court System Queens County; NYPD
Detective CARL DIAQUOI; NYPD Lieutenant JAMES
LOMBARDO; DOE 1-10, individually and as Members of
the New York City Police Department,

                 Defendants.
------------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-4175 (CBA) (RER)

**AMON, United States District Judge:**

      Plaintiff Kenneth J. Ward filed this pro se action requesting injunctive and declaratory relief and monetary damages pursuant to 42 U.S.C. § 1983 on July 15, 2015, and moves for leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915. For the reasons set forth below, the Court grants that motion, but dismisses a number of the defendants.

1

## BACKGROUND

Ward's complaint arises from two arrests. The facts surrounding Ward's first arrest are sparsely pleaded, but involve a long-running dispute with his ex-wife, Teresa R. Rodriguez. Rodriguez seems to have made domestic violence complaints against Ward, while Ward sought rental income from Rodriguez for her time living in a property Ward owned. (D.E. # 1, Compl., ¶¶ 35–45.) The state-court proceedings were before state court Judge Lenora Gerald. (Id. ¶ 80.) Ward claims Judge Gerald would not hear the rental-income aspect of the case, was biased in favor of Rodriguez, and delayed the proceedings causing him financial hardships. (See id. ¶¶ 41, 44–45, 47–52, 80, 173–74, 177–79, 182, 191–92, 194, 199–200, 202–03, 211–17, 227, 233, 244–45, 249, 252–54.) At some point, Rodriguez was granted an order of protection. (See id. ¶¶ 58, 222.) Ward was arrested for violating that order after Rodriguez stated that he was at her house (the "harassment arrest"). (Id. ¶¶ 58, 222.) Defendant N.Y.P.D. Detective Carl Diaquoi executed that arrest. (Id. ¶ 58.) Ward alleges that Diaquoi knew that he was not at the house because Diaquoi had seen pictures on Rodriguez's phone revealing that Ward was not there. (Id. ¶¶ 61, 223.) Ward further alleges that defendant N.Y.P.D. Lieutenant James Lombardo and N.Y.P.D. Officers John Does 1–10 (the "NYPD John Does") participated in the arrest. (Id. ¶¶ 74, 76, 240, 243.)

Ward's second arrest arose out of a court hearing on his Notice of Petition for nonpayment of rent against Rodriguez in Queens Civil Court. (Id. ¶ 252.) Ward was accompanied to his appearance by Etan Leibovitz.[1] (Id. ¶ 255.) While they sat in the back of the courtroom, Ward alleges that defendant Court Officer Marie Bennett would not let them leave before Rodriguez did because Ward was a man and Rodriguez was a woman. (Id. ¶¶ 257–58.)

---

[1] As discussed further below, Ward's complaint alleges a number of incidents that happened only to Leibovitz, not to Ward. Because those allegations are irrelevant for the claims brought here by Ward, the Court omits them.

When Bennett did then let Ward and Leibovitz leave, she followed them. (Id. ¶¶ 260–62.) Leibovitz told Bennett he was going to record Bennett, and Bennett called for backup. (Id. ¶¶ 262–63.) Defendant Court Officer Lieutenant O'Brien and defendants John Doe Shield # 6814, # 3814, # 7910, and John Doe Court Officers 1–15 (the "Court Officer John Does") met Bennett, Ward, and Leibovitz—who was recording using his cell phone—at the elevators. (Id. ¶¶ 265–66.) The officers brought Leibovitz to a bench outside an office, and Ward followed. (Id. ¶ 280.) A Court Officer John Doe told Ward to leave, but he sat down next to Leibovitz instead. (Id. ¶ 284.)

Defendant Court Officer Major Lowe then emerged from the office and allegedly told Lieutenant O'Brien to give Ward an order and then arrest him. (Id. ¶ 287.) O'Brien told Ward that Ward could go if he got up and left then. (Id. ¶ 288.) Leibovitz asked why Ward had to leave and offered to delete the video. (Id. ¶¶ 289–91.) But when Lowe told O'Brien to "give an unlawful order to Mr. Ward and then arrest him," Leibovitz stood to continue recording; Lowe then took Leibovitz's phone and returned to the office. (Id. ¶ 292.) Ward stood to leave, and defendant John Doe Shield # 7910 and another Court Officer John Doe arrested him (the "obstruction arrest"). (Id. ¶ 293.) Leibovitz was subsequently also arrested. (Id. ¶ 296.)[2]

Ward was charged with obstructing governmental administration in the second degree. (Id. ¶ 336.) Specifically, the criminal complaint[3] stated that when Lieutenant O'Brien approached Leibovitz, Ward "stepped in between Lieutenant O'Brien and [Leibovitz] and

---

[2] Ward's complaint describes in detail Leibovitz's holding and arraignment, but since those details are irrelevant to the claims brought here, the Court omits them.
[3] The Court liberally construes Ward's pleading here; the complaint actually recounts the criminal complaint against Leibovitz, not against Ward. But because Ward earlier alleged that he was arrested for obstructing government administration, (see id. ¶ 58), the Court will assume that the criminal allegations were the same.

3

obstructed the above mentioned investigation. . . . [T]he defendants were yelling and screaming in the hallways of the above mentioned location causing a crowd to gather." (Id.)

Queens County Assistant District Attorney ("ADA") Fogarty and ADA Piscionere prosecuted the case against Ward and Leibovitz. (Id. ¶ 338.) On June 4, 2014, defendant Piscionere called Leibovitz to tell him the case against him would be voluntarily dismissed for lack of evidence on July 24, 2014. (Id. ¶ 347.) At the July 24, 2014, court appearance, however, Piscionere told Ward and Leibovitz off the record that the case against Leibovitz would be voluntarily dismissed only if Ward accepted an adjournment in contemplation of dismissal ("ACD"); Ward and Leibovitz declined. (Id. ¶ 386.) Piscionere then stated on the record that if Ward pleaded to the charge, the county would dismiss the case against Leibovitz; they again declined. (Id. ¶ 388.) Allegedly in retaliation, Piscionere stated that the county would be filing a superseding information adding two counts of disorderly conduct against Ward.

Piscionere filed that superseding information on September 19, 2014. (Id. ¶ 396.) The superseding information added defendant Bennett's additional statements that "the defendants were yelling and screaming in the hallways of the above mentioned location causing a crowd to gather and public inconvenience, annoyance, and alarm" and that Bennett "ordered the defendants to disperse and that the defendants refused to comply with said order." (Id. ¶ 397.) At this time, ADA Fogerty became the primary prosecutor. (Id. ¶ 399.)

At a hearing on November 17, 2014, defendant Deputy Bureau Chief Floyd Herring made an appearance for the county. (Id. ¶ 409.) Herring offered both Ward and Leibovitz ACDs, which they declined. (Id.) Ward then contacted ADA Daniel O'Leary of the Integrity Bureau of the Queens County District Attorney's Office ("QDAO"), alleging Herring

4

orchestrated a 13-month cover up of QDAO misconduct. (Id. ¶ 422.) O'Leary referred the matter to Deputy Bureau Chief Scott Kessler. (Id. ¶ 423.)

On June 10, 2015, Ward was acquitted after trial on the obstructing governmental administration and disorderly conduct charges. (Id. ¶¶ 60, 218.)

Ward now brings the instant action alleging myriad violations of his federal and state constitutional rights and of state law in connection with these two arrests.

## STANDARD OF REVIEW

When considering a request to proceed IFP, the Court conducts an initial review of the pleadings and dismisses the case if it determines that the allegations are frivolous or malicious, fail to state a claim, or seek damages from an immune defendant. 28 U.S.C. § 1915(e)(2). To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts to enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of the pleadings, the Court must accept as true all factual allegations and draw all inferences in the plaintiff's favor. See Larkin v. Savage, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam). Although a pro se complaint must contain sufficient factual allegations to meet the plausibility standard, it is held to less stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Court is obliged to construe the pleadings liberally and interpret them as raising the strongest arguments they suggest. Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). Nevertheless, even pro se pleadings must present sufficient allegations to put the defendant on notice of "what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93. Although courts will grant leave to amend where a pro se pleading "gives any indication that a valid claim might be stated," Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000), "leave to amend a complaint may be denied when amendment would be futile," Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006).

## DISCUSSION

Claims against the following defendants are dismissed pursuant to § 1915(e)(2)(B). Because nothing in Ward's complaint suggests he could allege facts sufficient to make out claims against these defendants, leave to amend is denied as futile. Tocker, 470 F.3d at 491.

### A. State Court Judge Lenora Gerald

Judges have absolute immunity for acts performed in their judicial capacities, including erroneous or bad-faith acts. Mireles v. Waco, 502 U.S. 9, 11 (1991); Stump v. Sparkman, 435 U.S. 349, 355–56 (1978); Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Judge Gerald performed all of the acts that Ward alleges within her judicial function, (see, e.g., Compl. ¶¶ 45, 48, 174), and therefore judicial immunity bars all claims against her.

### B. The State of New York Office of Court Administration

Suits against the State of New York Office of Court Administration are barred by the Eleventh Amendment. The Eleventh Amendment guarantees "that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001). "The State Office of Court Administration is an arm of the state and therefore immune." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999).

### C. The DA Defendants

The Eleventh Amendment also bars official-capacity claims against Queens DA Richard Brown; Deputy Bureau Chiefs Floyd Herring and Scott Kessler; and ADAs Kevin Fogarty, Taylor Piscionere, Kelley Sessions, Angela Harper, and Leanne Staines (together, the "DA defendants"). Eleventh Amendment immunity extends to DAs and ADAs prosecuting criminal

matters. See, e.g., Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (Eleventh Amendment bars claims against DAs and ADAs acting in their official capacities); Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (DAs, when prosecuting a criminal matter, represent the state, not the county, and are therefore immune from suit).

Similarly, absolute prosecutorial immunity bars personal-capacity claims against the DA defendants. "'[A] state prosecuting attorney who acted within the scope of [her] duties in initiating and pursuing a criminal prosecution . . . is immune from a civil suit for damages'" under § 1983. Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (quoting Imbler v. Pachtman, 424 U.S. 409, 410, 431 (1976)). Absolute immunity extends to "virtually all acts . . . associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotation marks and citations omitted). Such conduct includes initiating a prosecution, turning over exculpatory evidence, and even failing to turn over exculpatory materials and conspiring to falsify testimony. See id. at 662 (failure to turn over Brady material protected by absolute immunity); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (conspiracy to falsify evidence protected by absolute immunity). Despite Ward's conclusory assertions that the DA defendants acted in investigative or administrative capacities, (see, e.g., Compl. ¶ 475), the incidents alleged all constitute prosecutorial duties for which the DA defendants are absolutely immune.

### D. The Court Administrator Defendants

Ward's factual allegations regarding Clerk of Queens County Civil Court Maureen Giddens and Deputy Clerk John Barry do not state a plausible claim for relief because Ward does not allege that they were personally involved in his alleged injuries. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Although Ward states conclusorily that they acted "in concert" with others to cause him injury, (see Compl. ¶ 68), the only facts he alleges concerning Giddens or Barry relate to Leibovitz alone. (See id. ¶¶ 68, 84–85, 352–55, 358, 380–84, 387, 389, 425.)

## CONCLUSION

For the reasons set forth above, claims against Judge Lenora Gerald; the State of New York Office of Court Administration; Queens DA Richard Brown; Deputy Bureau Chiefs Floyd Herring and Scott Kessler; ADAs Kevin Fogarty, Taylor Piscionere, Kelley Sessons, Angela Harper, and Leanne Staines; Clerk of Queens County Civil Court Maureen Giddens; and Deputy Clerk John Barry are dismissed. The Clerk of Court is respectfully directed to update the case caption accordingly.

Although Ward's remaining claims may ultimately be subject to dismissal, the Court declines to dismiss them at this time because the issues raised are sufficiently complex to warrant notice and motion practice. Ward's motion to proceed IFP is therefore granted. The United States Marshals Service is respectfully directed to serve the summons and complaint upon the remaining defendants without prepayment of Ward's fees. Ward is directed to provide addresses for these defendants within thirty (30) days of the date of this Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: May 23, 2016
   Brooklyn, New York

/S/ Judge Carol Bagley Amon
Carol Bagley Amon
United States District Judge

8