UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KENNETH J. WARD JR.,

                Plaintiff,

  -against-

THE CITY OF NEW YORK, a municipal
entity; NYPD DETECTIVE DIAQUOI;
QUEENS COUNTY DISTRICT ATTORNEY
RICHARD BROWN; DEPUTY BUREAU
CHIEF FLOYD HERRING; ASSISTANT
DISTRICT ATTORNEYS JARED SCOTTO,
TAYLOR PISCIONERE, LEANN STAINES,
ANGELA HARPER; DEPUTY CLERK JOHN
BARRY; MAJOR GLEN LOWE;
LIEUTENANTS DAWN O'BRIEN, FRANK
ROSSI; COURT OFFICERS MARIE
BENNETT, JAMES CANNON,
BERNADETTE FALCO, JOHN VASQUEZ,
KIMBERLY WILSON, SALVATORE
BRUNO, MIKE ESPOSITO, RICH
SUMOWSKI, KAHN; JOHN and JANE DOE
#1–5;

                Defendants.
-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-4175 (CBA) (ST)

**AMON, United States District Judge:**

Plaintiff Kenneth J. Ward, Jr., proceeding pro se, brings this case asserting claims arising under 42 U.S.C. § 1983 and under New York State law. (D.E. # 61 ("Am. Compl.") ¶¶ 588–746.) The City of New York and Detective Carl Diaquoi (together, the "City Defendants") and Major Glen Lowe, Lieutenant Dawn O'Brien, and Court Officer Marie Bennett (together, the "State Defendants") filed separate motions to dismiss, (D.E. # 65, 72), which the Court referred to the Honorable Steven Tiscione, U.S. Magistrate Judge, (D.E. dated July 5, 2017). Magistrate Judge Tiscione submitted a Report and Recommendation ("R&R") recommending that the Court grant

1

the motions to dismiss, (D.E. # 87), and Ward filed timely objections (D.E. # 89, 90). For the following reasons, the Court adopts Magistrate Judge Tiscione's R&R in large part, but grants Ward leave to amend his false arrest and malicious prosecution claims against Detective Diaquoi.

## BACKGROUND

The Court assumes familiarity with the factual and procedural history of this case, as set forth in the R&R. Briefly, Ward's claims arise out of two April 2014 arrests: (1) an arrest for criminal contempt and harassment for violating a protective order that his wife obtained against him, and (2) an arrest for disorderly conduct and obstructing governmental administration when he and his friend Etan Leibovitz were involved in a commotion in the Housing Part of the Queens County Civil Court. (See D.E. # 61 ("Am. Compl.").)

Ward's arrest for criminal contempt and harassment arises out of his attempt to have Liebovitz serve his wife, Teresa Rodriguez (also known as Teresa Ward), with legal process on April 3, 2014 based on her failure to pay rent. (See id. ¶¶ 51–126.) By that date, Ward and Rodriguez had each obtained orders of protection against one another. (See id. ¶¶ 128, 144–45.) Previously, Ward and Rodriguez lived together in the house Ward owns in Queens, New York but, starting in 2007, Rodriguez began "making false accusations of domestic violence against Mr. Ward in order to have him forcefully removed from the property." (Id. ¶¶ 63–64.) By 2010, Ward had moved out of the house, and Rodriguez was paying the mortgage. (Id. ¶ 67.) Rodriguez stopped making payments in mid-2012, and she had Ward arrested each time he attempted to collect rent. (Id. ¶¶ 68, 71.) As a result, Ward's bank initiated a foreclosure proceeding against him the following year. (Id. ¶ 69.) Another year later, on April 3, 2014, Ward allegedly drove Leibovitz to the house, where Leibovitz attempted to serve Rodriguez with a petition for non-payment. (Id. ¶¶ 85–121.) Rodriguez allegedly refused service and then followed Leibovitz back

2

to the car, where Ward was waiting, to tell Ward, "I got you now." (Id.) After driving away, Ward called the police to report Rodriguez's violation of the protective order he had against her. (Id. ¶¶ 114–21.) Five days later, Ward spoke with Detective Diaquoi, who informed him that he was arresting Rodriguez based on Ward's report. (Id. ¶¶ 122–26.) Detective Diaquoi also informed Ward that Rodriguez had told the police that Ward entered her home on April 3, 2014, and that he would be arrested based on this report. (Id.) The related contempt and harassment charges were ultimately dismissed. (Id. ¶ 584.)

Ward's arrest for obstructing governmental administration allegedly arises from an April 16, 2014 incident at the Queens County Civil Court. (Id. ¶¶ 137–314.) That day, Ward and Rodriguez appeared in court for a hearing on Ward's petition for non-payment. (Id. ¶ 137.) When the hearing ended, Court Officer Bennett, who was aware of the protective orders Ward and Rodriguez had against one another, allowed Rodriguez to exit the courtroom first. (Id. ¶¶ 142–66.) When Leibovitz arrived, Ward was still in the courtroom. (Id. ¶¶ 167–81.) After an argument with Court Officer Bennett about who should hold the door for whom—during which Court Officer Bennett eventually asked them if they wanted to leave in handcuffs—Ward, Leibovitz, and Court Officer Bennett left the courtroom. (Id. ¶¶ 181–96.) Following the threatened arrest, Leibovitz took out his cell phone and began recording the situation. (Id. ¶¶ 197–200.) When Court Officer Bennett informed Leibovitz that he could not record anything in the courthouse, Leibovitz refused to stop recording, even after back up had arrived, and instead repeatedly demanded that the officers tell him which statute prohibited recording in courthouses. (Id. ¶¶ 201–20.) This scene went on for some time, with Leibovitz arguing with the court officers at length and briefly struggling to keep possession of his phone as they tried to take it away. (Id. ¶¶ 220–314.) Ward participated in this scene by attempting to support Leibovitz in both his arguments and his physical

3

struggles with the officers. (Id.) Ward was explicitly given several opportunities to leave the courthouse, both before and after the court officers decided that they would arrest Leibovitz. (Id.) Ward refused and was ultimately arrested. (Id.) Ward was later acquitted of the disorderly conduct and obstructing governmental administration charges. (Id. ¶ 566.)

Ward brought this action on July 15, 2015. (D.E. # 1.) By Memorandum and Order dated May 23, 2016, the Court dismissed the claims against several defendants in the original complaint and granted Ward's motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (D.E. # 9.) Ward filed an Amended Complaint on April 17, 2017, asserting claims against many of the original defendants, including defendants the Court had dismissed,[1] and against several new defendants. (Compare D.E. # 1, and D.E. dated May 23, 2016, with Am. Compl.) Only the City of New York, Detective Diaquoi, Lieutenant O'Brien, and Court Officer Bennett have been served with process, however. (See D.E. # 18–23.) These defendants, along with Major Lowe, on whose behalf the New York Attorney General's Office has entered an appearance, (D.E. # 15, 26), have moved to dismiss. (D.E. # 65, 72.) Because the Court dismisses all claims against the unserved defendants, it does not address the service-of-process issues raised in the motions to dismiss.

The Court referred the motions to dismiss to Magistrate Judge Tiscione. (D.E. dated July 5, 2017.) Magistrate Judge Tiscione submitted an R&R recommending that the Court grant the motions to dismiss. (D.E. # 87.) Ward then filed timely objections. (D.E. # 89 ("Ward's First

---

[1] For the reasons described in that Memorandum and Order, the Court dismisses with prejudice Ward's claims against Queens County District Attorney Richard Brown; Deputy Bureau Chief Floyd Herring; Assistant District Attorneys Taylor Piscionere, Angela Harper, and Leanne Staines; and Deputy Clerk John Barry. (D.E. # 9.) For those same reasons, the Court dismisses Ward's newly asserted claims against Queens County Assistant District Attorney Jared Scotto. (See id. at 6–7 (dismissing the claims against the district attorney defendants on sovereign immunity and prosecutorial immunity grounds)); see also Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (holding that the Eleventh Amendment bars claims against district attorneys and assistant district attorneys acting in their official capacities); Shmueli v. City of N.Y., 424 F.3d 231, 236 (2d Cir. 2005) ("[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." (internal citation omitted)). The Court also dismisses Ward's improper-seizure claims against Deputy Clerk Barry for the reasons described below.

4

Objections"); D.E. # 90 ("Ward's Second Objections")). In his first set of objections, Ward argued that both of his 2014 arrests were unsupported by probable cause, and complained that he did not have sufficient time to provide complete objections. (Ward's First Objections.) To accommodate Ward's request for additional time, the Court granted him two and a half weeks to submit supplemental objections, (D.E. dated February 21, 2018), which he did, (Ward's Second Objections). In his second set of objections, Ward objected on a number of additional grounds. (See id.)

## STANDARD OF REVIEW

In resolving a motion to dismiss, the Court must "construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Galiano v. Fid. Nat'l Title Ins. Co., 684 F.3d 309, 311 (2d Cir. 2012). Nevertheless, the "[f]actual allegations must be enough to raise a right of relief above the speculative level," and the complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim]." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Put differently, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). It is thus not enough for a plaintiff to allege facts that are "merely consistent" with liability; if the plaintiff

5

has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." Twombly, 550 U.S. at 557, 570.

When deciding whether to adopt an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the R&R "to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (quoting Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," Fed. R. Civ. P. 72(b)(3), and, where the objecting litigant is proceeding pro se, the Court will construe his objections "liberally and 'interpret them to raise the strongest arguments that they suggest.'" Pabon v. Wright, 459 F. 3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, "[t]he clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments." Dafeng Hengwei Textile Co. v. Aceco Indus., 54 F. Supp. 3d 279, 280–83 (E.D.N.Y. 2014).

## DISCUSSION

Magistrate Judge Tiscione has recommended that the Court:

- dismiss Ward's Monell claims for municipal liability against the City of New York for failure to state a claim, (R&R at 19–22);

- dismiss any claims against Lieutenant James Lombardi, because Ward's Amended Complaint fails to adequately allege that Lieutenant Lombardi had any personal involvement with the alleged constitutional violations, (id. at 26–27);

6

- dismiss any claims against the State Defendants in their official capacities on sovereign immunity grounds, (id. at 27–28);

- dismiss Ward's § 1983 claims against Major Lowe, Lieutenant Rossi, and Court Officer Bennett for denial of due process and for deprivation of liberty, because they are duplicative of his false arrest and malicious prosecution claims, because the allegations about conspiracy are conclusory, and because Ward failed "either to allege an agreement or to aver any factual details concerning the inception or operation of the claimed conspiracy," (id. at 32–34);

- dismiss Ward's § 1983 claims against Major Lowe and Court Officer Bennett for violation of his First Amendment right to freedom of speech for failure to allege that he engaged in any constitutionally protected expressive activity, (id. at 34–36);

- dismiss Ward's § 1983 claims against Deputy Clerk John Barry for violation of his Fourth Amendment right to be free from unreasonable search and seizure and his Fourteenth Amendment right to due process, because the seizure of his phone was reasonable and because Ward has not alleged facts that can sustain a procedural due process claim under the Fourteenth Amendment, (id. at 36–39);

- dismiss Ward's § 1983 claims against Lieutenant O'Brien; Court Officers James Cannon, Bernadette Falco, John Vasquez, Kimberly Wilson, Salvatore Bruno, Mike Esposito, Rich Sumowski, and Kahn; and the John and Jane Doe Defendants for their failure "to intervene on Plaintiff's behalf in order to prevent the violation of his rights" by Major Lowe and Court Officer Bennett, because there can be no failure to intervene where there is no underlying constitutional violation, (id. at 39–41);

- dismiss Ward's § 1983 claims against Major Lowe, Lieutenant Frank Rossi, and Court Officer Bennett for false arrest, false imprisonment, and malicious prosecution because, based on Ward's own allegations, these defendants had probable cause to arrest Ward on April 16, 2014, (id. at 28–32);

- dismiss Ward's § 1983 claims against Detective Diaquoi for false arrest and malicious prosecution because, based on Ward's own allegations, Detective Diaquoi had probable cause to arrest Ward on April 3, 2014, (id. at 22–26);

- decline to exercise supplemental jurisdiction over Ward's remaining state law claims, (id. at 41);

- decline to address whether and which of the named defendants have been properly served in this case, given his recommendations that the Court dismiss all claims on other grounds, (id.);

- deny Ward leave to amend, because he has already amended his complaint once and permitting him another amendment would be futile, (id. at 41–42).

The Court finds these recommendations well supported by the record as it was before Magistrate Judge Tiscione. Most of Ward's objections simply reiterate his position before the Magistrate Judge. Where Ward has raised new matters, they are addressed below. For these reasons and the reasons described below, the Court adopts Magistrate Judge Tiscione's well-reasoned R&R, see Dafeng Hengwei, 54 F. Supp. 3d at 280–83; Jarvis, 823 F. Supp. 2d at 163, with the exception of his recommendation that Ward be precluded from amending his complaint. As explained below, the Court grants Ward leave to amend his claims for false arrest and malicious prosecution against Detective Diaquoi to add factual allegations asserted for the first time in his objections.

a. Monell Liability

In his objections, Ward advances one new theory of Monell liability: that the Queens County District Attorney's Office's decision to reduce the charges against Ward to misdemeanors were pursuant to a New York City policy and practice of depriving criminal defendants of their right to trial by jury. (Ward's Second Objections at 2.) Ward makes this argument even though he was acquitted of the obstructing governmental administration charges. The Court notes that it is the rare defendant who complains about being charged with a misdemeanor rather than a felony. (Am. Compl. ¶ 584.) Without addressing the plausibility of this theory of Monell liability, the Court observes that the theory suffers from the same deficiencies that doomed Ward's other theories: it is wholly conclusory. Additionally, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 536 (2d Cir. 1993) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)). That is, where claims center on decisions whether or not and on what charges to prosecute, the Second Circuit treats district attorneys and their assistants as state officials rather than as officials of a municipality. See id. Thus, Ward cannot state a claim for municipal liability under Monell premised on the Queens County District Attorney's Office's decision to reduce the charges against him to misdemeanors. Accordingly, the Court holds that Ward has failed to state a claim for Monell liability against the City of New York. See Ying Jing Gan, 996 F.2d at 536; Milo v. City of N.Y., 59 F. Supp. 3d 513, 526 (E.D.N.Y. 2014); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).

b. Sovereign Immunity

In his objections, Ward argues, for the first time, that sovereign immunity does not bar § 1983 claims against the State Defendants in their official capacities when they "exceed or abuse

their authority while acting in their official capacity." (Ward's Second Objections at 2.) Ward believes that the State Defendants exceeded their authority by "harassing and illegally confining Plaintiff without his agreement and against his will." (Id.) Unfortunately for Ward, a plaintiff cannot both sue a state officer for damages in his or her official capacity and escape state sovereign immunity by claiming that the state official's actions were ultra vires; instead, when the state officer has acted illegally, the plaintiff should sue the officer in his or her individual capacity, because "action of an officer of the sovereign . . . that is beyond the officer's statutory authority is not action of the sovereign." Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 696–97 (1982) (plurality opinion) (internal quotation marks omitted) (quoting Larson v. Domestic & Foreign Comm. Corp., 337 U.S. 682, 701 (1949)). The Ex Parte Young doctrine provides the relevant exception to state sovereign immunity, but it allows only actions seeking prospective relief against state officials to stop ongoing violations of federal law; it does not allow actions for damages against state officers in their official capacities. Green v. Mansour, 474 U.S. 64, 68 (1985).

   c. Freedom of Speech

In his objections, Ward raises a First Amendment argument not addressed by Magistrate Judge Tiscione: that Ward was exercising the purported right "to object to onerous and abusive actions by the Defendants" when he attempted to interfere with the State Defendants' efforts to take Leibovitz's recording device. (Ward's Second Objections to the R&R at 4.) These "onerous and abusive actions by the Defendants" appear to be their efforts to enforce the New York policy against recording in courthouses. (See id.; Am. Compl. ¶¶ 137–314.) Major Lowe's and Court Officer Bennett's alleged violations of Ward's constitutional rights, then, must be their efforts to move Ward out of the way as they tried to get the recording device out of Leibovitz's hands. (See

Am. Compl. ¶¶ 137–314.) Because Leibovitz "had no First Amendment right to record videos inside the courthouse," Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 U.S. Dist. LEXIS 128231, at *20–22 (E.D.N.Y. Sept. 20, 2016), Ward had no corresponding right to interfere with the State Defendants' reasonable and viewpoint neutral attempts to prevent Leibovitz from doing so.

### d. False Arrest, False Imprisonment, and Malicious Prosecution Claims Against Major Lowe, Lieutenant Frank Rossi, and Court Officer Bennett

In his objections, Ward argues for the first time that Court Officer Bennett's bias against him vitiated any probable cause to arrest him in the Queen County Civil Court. (See Ward's First Objections at 2; Ward's Second Objections at 3–4.) It does not. Probable cause is an objective matter and does not depend on the subjective biases of the arresting officer. Whren v. United States, 517 U.S. 806, 810–15 (1996). Accordingly, the Court holds that Ward fails to state claims against Major Lowe, Lieutenant Frank Rossi, and Court Officer Bennett for false arrest or malicious prosecution under § 1983. See Weyant, 101 F.3d at 852; Manganiello, 612 F.3d at 161–62.

### e. False Arrest and Malicious Prosecution Claims Against Detective Diaquoi

In his objections, Ward made several new arguments regarding Detective Diaquoi's probable cause to arrest him on April 3, 2014. (See Ward's First Objections at 2; Ward's Second Objections at 2.) Ward states that Rodriguez falsely told Detective Diaquoi that she had taken pictures of Ward entering the house; that she "conveniently erased" those pictures before anyone could see them; and that, before the arrest, Ward offered Detective Diaquoi photo and video evidence showing that the incident only involved Leibovitz stepping onto the lawn—not Ward entering the house. (See Ward's First Objections at 2; Ward's Second Objections at 2.) He also argues that "Detective Diaquoi was fully aware of the fact that [Rodriguez] [ha]d fabricated

information of a similar ilk about Plaintiff on numerous previous occasions, making her statements worthy of incredulity." (Ward's First Objections at 2; see also Ward's Second Objections at 2 (making similar arguments).)

The Court holds that Ward's Amended Complaint, as currently drafted, shows that Detective Diaquoi had probable cause to arrest Ward for violating the protective order, because Ward's wife told Detective Diaquoi that Ward had done so. (See Am. Compl. ¶¶ 124–26.) This accusation provided Detective Diaquoi with probable cause to arrest Ward "unless the circumstances raise doubt as to the [informant's] veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). Ward does state in his objections to the R&R that "Detective Diaquoi was fully aware of the fact that [Rodriguez] [ha]d fabricated information of a similar ilk about Plaintiff on numerous previous occasions." (Ward's First Objections at 2; see also Ward's Second Objections at 2.) His Amended Complaint does not include any allegations to that effect, however. (See Am. Compl.) Although Ward alleged that Rodriguez made false accusations of domestic violence against him and that she unjustly had him arrested a number of times for purported protective-order violations, (id. ¶¶ 64–76), he does not allege that Detective Diaquoi was aware of this history, (see id.). Thus, Ward does not plead any facts suggesting that Detective Diaquoi had any reason to doubt Rodriguez's veracity, and so her report was sufficient to establish probable cause. See Panetta, 460 F.3d at 395; see also Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) ("Shearman's past false accusations, however, do not undermine a finding of arguable probable cause because Betts nowhere alleged that the officers knew of the prior accusations on the night Betts was arrested.").

With probable cause in hand, Detective Diaquoi was "neither required nor allowed to sit as prosecutor, judge or jury" by weighing Rodriguez's accusation against Ward's denial and

Leibovitz's corroborating account. Panetta, 460 F.3d at 396. Ward's purportedly exculpatory photo and video evidence were likewise insufficient to vitiate probable cause, because photos and videos of Leibovitz approaching the house could not show that Ward had not entered the house and screamed at his wife. Detective Diaquoi's failure to investigate Ward's protestations of innocence simply are not enough to vitiate probable cause. See id. For these reasons, the Court holds that Ward's current complaint fails to state claims against Detective Diaquoi for false arrest or malicious prosecution under § 1983. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'"); Manganiello v. City of N.Y., 612 F.3d 149, 161–62 (2d Cir. 2003) (stating that probable cause is a "complete defense" to an action for malicious prosecution).

f. Leave to Amend

"Generally, leave to amend should be 'freely given,' and a pro se litigant in particular 'should be afforded every reasonable opportunity to demonstrate he has a valid claim.'" Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (internal citation omitted) (quoting Fed. R. Civ. P. 15(a), and Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984)). Although the R&R explains that Ward "has already amended his complaint once" and that Magistrate Judge Tiscione believes further amendment would be futile, (R&R at 41–42), Ward's objections suggest that granting leave to amend would not be futile with respect to Ward's claims for false arrest and malicious prosecution against Detective Diaquoi, because Ward has argued that Detective Diaquoi was aware of Rodriguez's alleged history of false police reports and thus may have had reason to doubt Rodriguez's veracity. If Ward makes factual allegations to support his claim that Detective Diaquoi was aware of a pattern of false reports by Rodriguez, he may be able show that Detective

Diaquoi did not have probable cause to arrest Ward based on Rodriguez's report that he had violated an order of protection. See Panetta, 460 F.3d at 395.[2]

In light of Ward's pro se status and his newly added argument regarding Detective Diaquoi's knowledge of Rodriguez's alleged history of false police reports, the Court grants Ward leave to amend his complaint with respect to his claims for false arrest and malicious prosecution against Detective Diaquoi by May 7, 2018. Ward's other federal claims are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Tiscione's R&R in large part, dismissing all of Ward's federal claims and declining to exercise supplemental jurisdiction over his state law claims. The Court dismisses Ward's § 1983 claims for false arrest and malicious prosecution against Detective Diaquoi without prejudice and grants Ward leave to amend his complaint to add factual allegations showing that Detective Diaquoi was aware of Rodriguez's alleged history of false police reports on or before May 7, 2018. The Court dismisses Ward's other federal claims with prejudice and dismisses Ward's state law claims without prejudice.

SO ORDERED.

Dated: March 31, 2018
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

---

[2] The City Defendants argue that Detective Diaquoi is entitled to qualified immunity on this claim because his arrest of Ward was supported by "arguable probable cause." (D.E. # 68 at 15–16 (citing Barcomb v. Sabo, 487 F. App'x 645, 647 (2d Cir. 2012).) This may be true, but the Court cannot make this determination until Ward explains the extent of Detective Diaquoi's knowledge of Rodriguez's alleged history of make false police reports.